# EXHIBIT A

# COMMUNICATIONS SERVICES AGREEMENT
## FOR TOLLGATE VILLAGE

**THIS COMMUNICATIONS SERVICES AGREEMENT ("Agreement")**, is entered into this 1st day of March, 2006 by and between **TOLLGATE VILLAGE ASSOCIATION, INC.**, a Tennessee nonprofit corporation ("**Association**"), and **CRYSTAL CLEAR TECHNOLOGIES, LLC**, a Tennessee limited liability company ("**Crystal Clear Technologies**").

## RECITALS:

A.      Association is the master community association established for the purpose of, among other things, arranging for the provision of communications services to the homeowners and residents in a master planned residential community commonly known as Tollgate and/or Tollgate Village, as further described in the Declaration of Restrictions, Covenants and Easements for Tollgate, as amended from time to time (**"Declaration"**).

B.      Association desires to make available to homeowners and/or residents of Tollgate Village (**"Homeowners"**) high-quality, affordable, broadband communications services, including telephone service, high-speed Internet access service, and multi-channel video service (**"Services"**).

C.      Association believes that it will most affordably and effectively be able to secure the Services for Tollgate Village by engaging, on behalf of Tollgate Village, a qualified communications services provider to operate and maintain a state-of-the-art Fiber-to-the-Premises communications infrastructure, facilities and equipment located within Tollgate Village (**"System"**)  and to provide the Services over the System to the Homeowners.

D.      By separate agreement, Crystal Clear Technologies has obtained an easement to operate and maintain the System within Tollgate Village and to provide Services to the Homeowners (**"Easement"**).

E.      Association has chosen Crystal Clear Technologies to operate and maintain the System, and to provide Basic Services (as further defined below) to each home and multi-family dwelling unit in Tollgate Village  (**"Home"**) on an exclusive basis consistent with the terms of this Agreement and applicable law.

F.      Association acknowledges that it is appropriate and necessary to fully and fairly disclose to each Homeowner (before the sale and settlement of a Home) that the use and enjoyment of the System (**"System Access"**)  and the receipt and use of the Basic Services will be made available as an amenity of each Home and that payment for such availability and use will be included as part of regular Association assessments to Homeowners.

G.      Crystal Clear Technologies may, subject to individual arrangements with each Homeowner, provide Additional Services (as further defined below) above and beyond the Basic Services to be provided to each Home.

Case 3:16-cv-00008   Document 1-1   Filed 01/05/16   Page 2 of 36 PageID #: 22

# AGREEMENT:

IN CONSIDERATION of the foregoing recitals, the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Association and Crystal Clear Technologies hereby agree as follows:

## ARTICLE 1
## RECITALS

1.1     The foregoing recitals are incorporated herein by reference.

## ARTICLE 2
## CRYSTAL CLEAR TECHNOLOGIES RESPONSIBILITIES

2.1     **Provision of Services**.

(a)     Video Service.  Crystal Clear Technologies shall provide to Association the transmission and maintenance of multi-channel video programming or other video programming, and which may include other off-air and satellite channels (**"Video Service"**),  for delivery to each Home in Tollgate Village.  Video Service includes Basic Video Service, Expanded Basic Video Service and Premium Channels, all as further defined herein.  **"Basic Video Service"** shall mean the number and type of channels that are identified as Basic Video Service and set forth in Exhibit 1.  **"Expanded Basic Video Service"** shall mean video programming services or channels offered in addition to Basic Video Service, excluding Premium Channels.  **"Premium Channels"** shall mean any channel that the subscriber pays an additional fee to receive on a per channel or per program basis, including, for example, HBO, Showtime, Cinemax, The Movie Channel, and any pay-per-view or video on demand programming.  Crystal Clear Technologies reserves the right to add, delete, or modify the programming included in Basic Video Service, Expanded Basic Video Service and Premium Channels, but at all times shall offer programming reasonably similar to that provided by other franchised cable providers in Williamson County, Tennessee.  Homeowners shall be notified at least thirty (30) days, or as soon as reasonably practicable, in advance of any such programming changes.

(b)     Internet Service.  Crystal Clear Technologies shall provide to Association that service which permits access from each Home in Tollgate Village to the worldwide system of computer networks as originally conceived by the Defense Advanced Research Project Agency, as such network continues to evolve, through Crystal Clear Technologies' network installed in Tollgate Village ("**Internet Service**").  Internet Service will include for each Home: (i) the software reasonably necessary to activate Internet Service in accordance with the specifications contained herein (to the extent additional software beyond what normally is provided by the manufacturer with a personal computer is required); (ii) up to five (5) static (non-varying) or Dynamic Host Configuration Protocol ("DHCP") (varying) IP addresses upon request, allowing

2

Homeowner to connect up to five (5) computers or Internet appliances with different IP addresses to the Internet; and (iii) a service level designed to maintain average speeds of 5 mbps at least ninety-seven percent (97%) of the time (**Basic Internet Service**"). Homeowners shall be required to furnish their own computers or other equivalent Internet access equipment to access the Internet Service ("**Customer Internet Equipment**" or "**CIE**"). Such CIE shall meet or exceed all applicable and prevailing industry and regulatory safety and performance standards, as well as the minimum criteria set forth in Exhibit 2 to this Agreement. Crystal Clear Technologies may reasonably modify the minimum criteria in Exhibit 2. Homeowners may purchase network interface cards ("**NICs**") (which are not included in the software provided by Crystal Clear Technologies as referenced above) from Crystal Clear Technologies at Crystal Clear Technologies' then-prevailing market rate for such NICs in the event that Homeowners' CIE does not include a NIC. In the event that a particular Homeowner's CIE is not in compliance with the minimum criteria set forth in Exhibit 3, such Homeowner shall be liable to Crystal Clear Technologies for any damages to the System caused by the noncompliant CIE and indemnify Crystal Clear Technologies against any third party claims for damages relating to the noncompliant CIE.

(c)     Telephone Service. Crystal Clear Technologies shall provide to Association a telephone communication service accessible by each Home that is capable of transmitting voice, data and/or video over packet switched networks and interconnected with the public switched telephone network ("**Telephone Service**"). "**Basic Telephone Service**" is as described in Exhibit 3. Basic Telephone Service must include access to the 911 emergency system maintained in the area. Telephone Service may also include enhanced applications and adjunct services and features attendant to Basic Telephone Service, such as voice mail, call waiting, caller ID, conference calling, call forwarding, and long distance dialing.

(d)     Basic Services Availability. Crystal Clear Technologies shall make Basic Video Service, Basic Internet Service, and Basic Telephone Service (collectively "**Basic Services**") available to each Home in Tollgate Village. Crystal Clear Technologies shall make Basic Services available to a Home no later than the date of anticipated initial occupancy of such Home provided Crystal Clear Technologies has been given at least seven (7) calendar days prior notice of such date, and thereafter for the term of, and subject to, the terms and conditions of this Agreement ("**Basic Services Period**").

(e)     Delivery of Additional Services by Crystal Clear Technologies. In addition to Basic Services, Crystal Clear Technologies may, during the term of this Agreement, offer to Homeowners additional services, including, but not limited to, Expanded Basic Video Service, Premium Channels, pay-per-view, video on demand, upgraded Internet Service, enhanced Telephone Service, which Homeowners may purchase, as further detailed in Crystal Clear Technologies' literature, directly from Crystal Clear Technologies on an individual, service-by-service, or feature-by-feature basis and for which Crystal Clear Technologies will bill an additional charge . The Additional Services initially available are listed in Exhibit 4.

3

(f)  Use and Enjoyment of the System. Crystal Clear Technologies shall operate and maintain the System, which shall be capable of providing Services to each Home. Crystal Clear Technologies shall pay all reasonable costs and expenses incurred by it in operating and maintaining the System, subject to Association's reasonable cooperation and reasonable best efforts to mitigate expenses. The System will extend to and include a network interface device ("NID") located at or on each Home. The System will not include any wiring and/or equipment extending from the NID to points within the Home **("Home Wiring")**. Home Wiring, however, does not include, without limitation, any (i) converter boxes, amplifiers, line extenders, or other active devices within a Home or (ii) facilities or equipment that provide Services simultaneously to more than one Home. All component parts of the System shall meet or exceed generally accepted industry standards as to quality and performance.

2.2  **Service Quality Standards.** Crystal Clear Technologies shall:

(a)  Provide Services in accordance with applicable legal and regulatory standards, including those established by the Federal Communications Commission (the "**FCC**"), the State of Tennessee, and other governmental regulators, as well as reasonable industry standards generally applicable to Comparable Providers, as hereinafter defined, providing similar Services under comparable rate plans. "**Comparable Providers**" shall mean telecommunications service providers that provide residential Services in Williamson County, Tennessee, and who have similar technical service and performance abilities and who offer similar levels of customer service as required in this Agreement. Such performance standards are further detailed in Exhibit 5 attached hereto;

(b)  Service, inspect and test relevant segments of the System at such frequency and in such a manner as is reasonably necessary to maintain an appropriate quality of service and to maintain the System in good working order and condition;

(c)  Inform all Homeowners of their right to video and telephone repair, service and maintenance by displaying this information (including the telephone number to call) in appropriate Crystal Clear Technologies literature; the parties acknowledge that a statement in a brochure or agreement provided to each Homeowner at the time they initiate Services shall constitute compliance with this requirement;

(d)  Provide written instructions to each Homeowner that explain the procedures for placing a service call to Crystal Clear Technologies; the parties acknowledge that a statement in a brochure or agreement provided to each Homeowner at the time they initiate Services shall constitute compliance with this requirement;

(e)  Maintain regular business hours between 9:00 a.m. and 5:00 p.m., local time, Monday through Friday;

(f)  After regular business hours, forward its telephone lines to a live operator network operations center ("**NOC**"), which Homeowners may call in the event they experience a malfunction in their Services; the NOC will have the ability to contact and dispatch Crystal Clear Technologies' technical personnel in the event of an emergency;

4

(g)     Respond, either by itself or through a designated service representative, to all service calls and trouble reports within a 24-hour time period after receiving notice of a service problem or trouble report, except where the performance of Crystal Clear Technologies' obligations is prevented by Force Majeure, as defined herein;

(h)     Respond to outages promptly after actual receipt of notification thereof (unless such a response is not reasonably practicable under the circumstances, in which case Crystal Clear Technologies shall respond as quickly as is reasonably practicable under the circumstances); and

(i)     Comply with all reasonable security procedures applicable to Tollgate Village.

2.3     **Notice of Disruptions**. Crystal Clear Technologies shall give notice to Association prior to commencing any work on the System that Crystal Clear Technologies expects will result in a disruption of service to Tollgate Village. Crystal Clear Technologies shall not be required, however, to give notice to Association (1) in an emergency situation, (2) where such notice cannot practicably be given, or (3) for routine servicing and repair of the System that Crystal Clear Technologies does not expect will materially affect the provision of Services to Tollgate Village.

2.4     **Technical and Performance Review**. Crystal Clear Technologies shall meet with representatives of Association, at least once annually, to review significant technical improvements and other developments within the telecommunications and video industries and determine how, or if, they may be applied to Tollgate Village. Crystal Clear Technologies and Association shall reasonably cooperate and assist each other in conducting such reviews. In light of such review, either party may issue an "**Upgrade Request**" stating whether an upgrade is recommended, describing any upgrade being requested, and setting forth the basis and the terms, conditions and impact of its request. If an upgrade is recommended, the parties shall confer in order to agree upon any relevant conditions, including, without limitation, technical specifications, the direct cost thereof, performance criteria and the appropriate changes to this Agreement. Within thirty (30) calendar days after a party issues an Upgrade Request, the responding party shall notify the requesting party, in writing, whether it will comply with the request. If the responding party does not so notify the requesting party within thirty (30) calendar days after receipt of the Upgrade Request, the responding party will be deemed to have rejected the Upgrade Request.

2.5     **Community Channels and Intranet**. Crystal Clear Technologies will allocate a channel to its channel lineup for the specific purpose of hosting a Community television channel to televise Community events, attractions, features, amenities, and lifestyle propositions and another channel specifically for Tollgate Village to use as it sees fit. Crystal Clear Technologies also will create a Community intranet portal for the purposes of displaying Community events, attractions, amenities and related information. Crystal Clear Technologies shall also provide wireless hot spot access to specific locations no fewer than the sales center, community center, club house, and service building. Crystal Clear Technologies will also provide a camera system to monitor the pool areas and recreation center, if any. Customer viewing access to such

5

cameras may be included in both upgrade internet packages and the home security package, or may be available at a reasonable monthly cost.

2.6     **Outside Delays**. If Crystal Clear Technologies' performance of any of its responsibilities in this Agreement is delayed or otherwise impaired by an act or omission of Association, a builder, a Homeowner, any utility, an affiliate or subcontractor of any of the aforementioned, or by an act of Force Majeure, then the time for Crystal Clear Technologies' performance of such responsibilities shall be extended, and otherwise excused, for such period of time up to the time lost by reason of the aforesaid causes or as otherwise reasonably necessary. Crystal Clear Technologies will provide Homeowners pro rata credits for service outages in accordance with Section 8.4.

2.7     **Authorizations**. Crystal Clear Technologies shall, at Crystal Clear Technologies' expense and at such times as may be required under applicable law and this Agreement, obtain and maintain all material permits, franchises, contracts, licenses, consents, authorizations from governmental agencies or third parties and any easements or rights-of-way outside of Tollgate Village that are reasonably necessary to construct, operate, and maintain the System and/or to provide Services to Tollgate Village.

2.8     **Home Wiring Inspection**. Crystal Clear Technologies shall provide Home Wiring and conduit inspection services, at Association's request and at Crystal Clear Technologies' then-prevailing rates, to insure that the Home Wiring and conduit complies with the Crystal Clear Technologies wiring and conduit specifications given to a developer or builder constructing a Home in Tollgate Village. After such inspection, Crystal Clear Technologies shall notify Association, in writing, whether the Home Wiring and conduit inspected complies with the Crystal Clear Technologies Home Wiring and Conduit Specifications. In the event Home Wiring and conduit does not comply with the Crystal Clear Technologies Home Wiring and Conduit Specifications, Crystal Clear Technologies shall not be in default under this Agreement for problems, delays, or circumstances resulting from such non-compliance, and may, in its reasonable discretion, discontinue Services to a Home with non-compliant Home Wiring and conduit until such non-compliance is cured.

## ARTICLE 3
## ASSOCIATION RESPONSIBILITIES

3.1     **Marketing of Services**. To the extent permitted by law, the Association shall provide to Crystal Clear Technologies, for the term of this Agreement and any renewals thereof, the exclusive right to promote and market Services in and to Tollgate Village. Such exclusive right shall include, but not be limited to, the right to include, upon Association's consent, promotional materials in no less than four mailings by Association to Homeowners and the right to obtain updated lists of Homeowner names and addresses upon request. Association shall not promote, market, or provide access for others to promote or market, to or within Tollgate Village, any Telephone, Video, Internet, or Home Security Services provided by a provider other than Crystal Clear Technologies for the term of this Agreement, unless otherwise specifically required by applicable law. Association shall not, nor shall Association permit any of its respective affiliates, officers, employees, attorneys or other representatives or agents, to

6

negotiate with, solicit, engage in any discussions with, provide any non-public information to, or otherwise cooperate with, any third party (other than Crystal Clear Technologies) which seeks to or expresses an interest in marketing, promoting, selling or providing Services in and to Tollgate Village.

3.2 **Access Rights for Marketing**. Association shall provide to Crystal Clear Technologies space in Tollgate Village's community center, reasonably adequate for an interactive display and demonstration of the System and the Services and marketing materials, including dedicating such area to Crystal Clear Technologies' marketing of the Services. Subject to the limitations set forth in this Agreement and applicable law, Association will permit Crystal Clear Technologies' employees and contractors reasonable access, at no charge, to Tollgate Village for the purpose of marketing the Services and conducting satisfaction surveys. All such marketing and surveys shall (i) be conducted in a professional manner and in good taste, (ii) be of high quality and (iii) be subject to the review and approval of the Association.

3.3 **Alternate Provider Access**. Subject to and in accordance with Section 4.1, Association shall coordinate and cooperate with Crystal Clear Technologies in handling requests by Alternate Providers (as defined below) to access Tollgate Village and in implementing any agreed upon arrangements for such access. Association's coordination and cooperation shall include, but not be limited to, (i) reasonably facilitating construction activities by an Alternate Provider, and (ii) making any necessary modifications to access arrangements to accommodate an Alternate Provider.

3.4 **Access to Homes**. Association shall use reasonable best efforts to assist Crystal Clear Technologies in gaining access to Homes to facilitate Crystal Clear Technologies' performance under this Agreement, including, but not limited, access to a Home for the installation or removal of Crystal Clear Technologies' equipment.

3.5 **Required Disclosures**. As soon as practicable, Association shall provide written notice to each Homeowner that (i) Crystal Clear Technologies will be providing System Access and Basic Services at the Home and that the charges for such System Access and Basic Services, as described in herein, are an assessment of the Association and will be directly billed by Crystal Clear Technologies to the Homeowner; (ii) the Homeowner has the option, in his/her sole discretion, to obtain Services, including the Basic Services, from any and all Alternate Providers, but the Homeowner will not be relieved of his/her obligation to pay for System Access or the Basic Services provided by Crystal Clear Technologies; and (iii) the Homeowner has the option, but not the obligation, to engage Crystal Clear Technologies to provide specifically identified Additional Services to such Homeowner (collectively **"Required Disclosures"**). In furtherance of clause (ii) above and without limiting the effect of the foregoing Required Disclosures, the parties agree that no resident within Tollgate Village, whether tenant or owner, shall be denied access to an available franchised or licensed cable television service, nor shall such resident or cable television service be required to pay anything of value in order to obtain or provide such service except those charges normally paid for like services by residents of, or providers of such services to, single-family homes within the same franchised or licensed area and except for installation charges as such charges may be agreed to between such resident and the provider of such services. Association will also insert the Required Disclosures in marketing materials and

7

information provided to Homeowners in advance of their purchase of a Home in Tollgate Village.

3.6 **Services Agreements with Homeowners.** Association acknowledges that Crystal Clear Technologies will require each Homeowner to enter into a services agreement with Crystal Clear Technologies (a "**Services Agreement**") setting forth the procedures for the provision of Services and System Access and the Homeowner's obligations related thereto, including the Required Disclosures. Association agrees to deliver a copy of the Services Agreement to each new Homeowner in advance of such Homeowner's purchase of a Home in Tollgate Village. As Crystal Clear Technologies enters into Services Agreements with Homeowners, the Association acknowledges the privity of contract between Crystal Clear Technologies and the Homeowner under a Services Agreement and the independent enforceability of such Services Agreement in event of Association's bankruptcy.

## ARTICLE 4
## ALTERNATE PROVIDER ACCESS

4.1 **Responsibility for Alternate Provider Access.** Crystal Clear Technologies shall be Association's duly authorized and exclusive agent to respond to requests from other providers ("**Alternate Providers**") seeking to provide Services to Tollgate Village and, as appropriate, to negotiate reasonable terms, conditions and compensation payable to Crystal Clear Technologies for the Alternate Provider's access to and/or use of Crystal Clear Technologies' System. In the event Association receives a request (a) from an Alternate Provider ("**Requesting Provider**") to provide Services to Tollgate Village, install facilities within Tollgate Village, or access the System, or (b) from a Homeowner requesting Services from an Alternate Provider, Association shall promptly, and in any event within five (5) days of receiving such request, notify Crystal Clear Technologies of the request and provide written notice directly to the Requesting Provider or Homeowner to contact Crystal Clear Technologies.

4.2 **Standards for Interconnection.** In the event Crystal Clear Technologies reaches an agreement with an Alternate Provider to use the System or to interconnect any Service on the System with similar communications systems in order to permit such Alternate Provider to provide Services to Homeowners, Crystal Clear Technologies shall coordinate with such Alternate Provider and the operators of such other systems to designate a reasonable and mutually acceptable place and manner for such interconnection, provided such interconnection does not demonstrably and unreasonably downgrade the level of technology or performance of the System. Such interconnection shall be on such reasonable rates, terms and conditions as mutually agreed by Crystal Clear Technologies and such Alternate Provider. No interconnection shall take place without prior notice and full disclosure of all relevant rates, terms, and conditions to Crystal Clear Technologies, and a demonstration that all signals to be interconnected will comply with applicable technical and performance standards, including FCC standards and applicable performance criteria and measures, for all classes of signals. Crystal Clear Technologies shall cooperate with any interconnection corporation, regional interconnection authority, state, county or federal regulatory agency which may be established for the purpose of regulating, facilitating, financing or otherwise providing for the interconnection of communications systems beyond the boundaries of the Development.

8

Notwithstanding the foregoing, this Agreement is not intended to create or expand interconnection rights on behalf of third parties that do not otherwise exist under applicable law.

4.3 **Access Disputes**. In the event that Crystal Clear Technologies and an Alternate Provider fail to reach agreement on (i) compensation payable for a license to use the Easement and/or the System pursuant to Section 4.1 hereof or (ii) interconnection standards, or such Alternate Provider disputes Crystal Clear Technologies' entitlement to impose an access fee (each, an **"Access Dispute"**), Crystal Clear Technologies shall continue to provide the Alternate Provider a license to use the Easement and/or System while Crystal Clear Technologies and such Alternate Provider resolve the Access Dispute, provided that such Access Provider agrees to escrow the applicable access rates proposed by Crystal Clear Technologies, to submit such Access Dispute to Expedited Dispute Resolution, and to acknowledge that access rates previously negotiated by Crystal Clear Technologies with other Alternate Providers shall not be binding in any Expedited Dispute Resolution regarding an Access Dispute.

## ARTICLE 5
## RATES

5.1 **Basic Video/Internet Rates**. The initial rates for Basic Video Service (inclusive of System Access for such Services) and Basic Internet Service shall be $ 110 per Home, per month (plus applicable taxes, franchise and regulatory fees) (**"Video/Internet Base Rate"**). Crystal Clear Technologies shall, at its discretion, have the right to adjust rates and fees. Rate and fee adjustments, if any, shall be made on January 1st of each year unless otherwise stipulated with thirty (30) day written notice to the Homeowners.

5.2 **Basic Telephone Rates**. The initial rates for the Basic Telephone Service (inclusive of System Access for such Services) shall be $ 28.99 per Home, per month (plus applicable taxes, franchise and regulatory fees) (**"Telephone Base Rate"** and together with the Video/ Internet Base Rate (for a total of $ 138.99 plus applicable taxes, franchise and regulatory fees), the **"Base Rates"**). **Crystal Clear Technologies** shall, at its discretion, have the right to adjust rates and fees. Rate and fee adjustments, if any, shall be made on January 1st of each year unless otherwise stipulated with thirty (30) day written notice to the **Homeowners**.

5.3 **System Access Rates**. The initial rates for System Access are included in the Base Rates. Crystal Clear Technologies reserves the right to charge Homeowners separately for System Access (**"System Access Rates"**) provided the aggregate of the System Access Rates and the Base Rates (as modified to reflect the separate charge for System Access Rates) shall not exceed the Base Rates in effect immediately prior to the commencement of separate charges for System Access Rates.

5.4 **Activation Charges for Basic Services**. Crystal Clear Technologies will charge and bill to each Homeowner a one-time activation fee (plus applicable taxes) to activate Basic Services (the **"Activation Charge"**). The Activation Charge will be One Hundred and Fifty Dollars ($ 150,00) during the first year of this Agreement and may be increased thereafter at up to five percent (5%) per year. The Activation Charge will include the activation of Basic Video Service at up to three (3) outlets in the Home, one (1) computer to the Internet Service, and one

9

(1) telephone line as requested by the Homeowner. For subsequent installations, the Activation Charge will be $75.00 per video set-top box and rental fees of $6.00 per month per set-top box. The connection of additional computers to the Internet Service and additional voice telephone lines will be subject to Crystal Clear Technologies' then-prevailing standard installation charges at the time of the installation.

5.5 **Billing and Payment for Basic Services and System Access.** Crystal Clear Technologies will bill the Association directly for Basic Services, System Access and applicable taxes, franchise, and regulatory fees on a monthly basis. The Association will include such charges in its billing to the Homeowners as part of the regular periodic Association assessment, which will be no less frequently than monthly. Payment to Crystal Clear Technologies of billed amounts for Basic Services, System Access and applicable taxes, franchise and regulatory fees shall be due and payable by the Association thirty (30) days from the Association's receipt of each bill. The Association shall be assessed a late fee for any payment not received by Crystal Clear Technologies within five (5) days after such payment is due. The monthly bill to the Association from Crystal Clear Technologies will reflect each Homeowner's name, address, the date of service availability and totals of all monies owed (prorated if necessary) for Basic Services rendered and for System Access, together with applicable taxes, franchise and regulatory fees. The monies due and payable to Crystal Clear Technologies by the Association for Basic Services, System Access and applicable taxes, franchise and regulatory fees are not in any way contingent upon (i) whether or not a Homeowner used the Basic Services, or (ii) a Homeowner electing to receive all or any Basic Services from an Alternate Provider or (iii) Homeowner payment of Association assessments for the Basic Services and System Access. The price for Basic Services, Additional Services and System Access does not include taxes, equipment fees or rentals, installation charges, or regulatory fees and charges such as: 911 relay and e911 access, Tennessee Poison Control Center Surcharge, Federal Access Charge, Federal Universal Service Fund, Local Number Portability Charge, Federal Excise Tax, Extended Area Calling Charge, Tennessee Universal Service Support Fund, Tennessee combined and use tax, Cable/Satellite tax/franchise fees.

5.6 **Charges, Billing and Payment for Other Services and Equipment.** Homeowners and Crystal Clear Technologies will be permitted to contract directly for Home Wiring installation, inspection and maintenance services, Additional Equipment, and Additional Services to the extent offered by Crystal Clear Technologies. Charges for such other services and equipment will be computed and billed at Crystal Clear Technologies' then-prevailing rates for such other services and equipment, including activation charges, and shall be in addition to any sum, fee or assessment such Homeowner is required to pay for the Basic Services by virtue of its ownership of a Home within Tollgate Village. The rates for such other services and equipment are subject to change from time to time at Crystal Clear Technologies' sole discretion, provided that the rates will be competitive to the rates charged by any incumbent or franchised service providers and/or carriers, as the case may be, in Williamson County, Tennessee. Crystal Clear Technologies will bill or invoice Homeowners separately and directly for all such other services and equipment. Each bill or invoice to a Homeowner will include instructions for such Homeowner to remit payment directly to Crystal Clear Technologies, or its designee, by or on a date of the month designated by Crystal Clear Technologies, or its designee, following the month in which the billed charges were incurred. Crystal Clear Technologies shall

10

be responsible to ensure that the billings will be sufficiently detailed to comply with all applicable laws and rules, including, without limitation, truth in billing rules of the FCC or other regulatory agencies. Association acknowledges that Crystal Clear Technologies has the right to commence any and all collection actions available to it under applicable law. Crystal Clear Technologies shall have the right to disconnect Additional Services in the event that Crystal Clear Technologies is not paid by Homeowner the full amount due each month on a timely basis.

5.7     **Legally Blind or Hearing Impaired Homeowners.** Any hearing impaired or legally blind Homeowner who occupies a Home without a non-hearing impaired or sighted person may discontinue Video Service under this Agreement without incurring a disconnect fee, penalty or subsequent service charge.

5.8     **Interest and Late Charges.** Nothing herein will be construed to prohibit, consistent with applicable law, Crystal Clear Technologies from charging Homeowners interest, collection fees and/or late fees on any overdue or past due amounts for Additional Services. Late payments by Homeowners for Additional Services will be governed by the Services Agreement that will be entered into between Crystal Clear Technologies and each Homeowner.

## ARTICLE 6
## RIGHT TO TERMINATE SERVICES

6.1     **Unauthorized or Unsafe Use of Services.** Crystal Clear Technologies may, at its discretion, terminate System Access and Services to any Homeowner in the event such Homeowner engages in unauthorized or unsafe use of Services, theft of signal, or violation of any agreement between Homeowner and Crystal Clear Technologies, or violation of a federal, state or local law or regulation governing the Services. Termination of System Access or any Service to such Homeowner shall not prejudice or limit any other rights or remedies Crystal Clear Technologies may have.

## ARTICLE 7
## COVENANTS

7.1     **Association.** Association covenants, represents and warrants as follows:

(a)     Exclusive Marketing. Association agrees that, to the extent it markets communication services, it will only market Crystal Clear Technologies' Services, and will not market any Alternate Provider's services during the term of this Agreement.

(b)     Disclosure to Homeowners. Association covenants to disclose to each Homeowner the Required Disclosures.

(c)     Binding Obligation of Declaration. The Declaration is a binding obligation of Association and is enforceable against Association in accordance with its terms. Association will provide Crystal Clear Technologies a copy of the Declaration contemporaneously with the execution of this Agreement and will submit any subsequent proposed amendments to the Declaration to Crystal Clear Technologies for review and comment. Association will not amend the Declaration such that the amendment would

11

(i) result in a termination of this Agreement or allow Association to terminate this Agreement or (ii) have a materially adverse effect on Crystal Clear Technologies.

(d) <u>Authority and Binding Obligation</u>. Association each has the full corporate power and authority, of its own accord and/or through appropriate arrangements with Homeowners or others, to enter into, deliver and fully perform the terms and conditions of this Agreement. This Agreement has been duly executed and delivered by Association and constitutes the valid and binding obligation thereof enforceable against Association in accordance with its terms.

(e) <u>Organization and Standing</u>. Association is a Tennessee non-profit corporation duly organized, validly existing and in good standing under the laws of Tennessee.

(f) <u>No Prohibition on Performance</u>. There exists no event or circumstance within the control of Association, or to the knowledge of Association outside the control of Association, that precludes or prohibits Association from performing their respective obligations under this Agreement.

(g) <u>Approvals, Authorizations and Inspections</u>. Association covenants that it will cooperate with Crystal Clear Technologies in Crystal Clear Technologies' effort to obtain any and all approvals and authorizations, or during any inspections, required for the System.

7.2 **Crystal Clear Technologies**. Crystal Clear Technologies covenants, represents and warrants the following:

(a) <u>Organization and Standing</u>. Crystal Clear Technologies is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Tennessee.

(b) <u>Authorization and Binding Obligation</u>. Crystal Clear Technologies has full limited liability company power and authority to enter into, deliver and fully perform this Agreement. This Agreement has been duly executed and delivered by Crystal Clear Technologies, and constitutes the valid and binding obligation thereof, enforceable against Crystal Clear Technologies in accordance with its terms.

(c) <u>No Prohibition on Performance</u>. There exists no event or circumstance within the control of Crystal Clear Technologies, or to the knowledge of Crystal Clear Technologies outside the control of Crystal Clear Communications, which precludes or prohibits Crystal Clear Technologies from performing its obligations under this Agreement.

(d) <u>Governmental Authorizations</u>. Crystal Clear Technologies has applied (or will apply) for all necessary permits, licenses, franchises, and authorizations, to the extent required, to operate the System and to provide the Services.

12

(e) Compliance with Laws. In the exercise of the rights, privileges, and licenses granted herein, Crystal Clear Technologies shall comply with all applicable local, state and/or federal laws, regulations, standards and specifications relating to the operation, use, maintenance, repair, and replacement of the System.

(f) Operation. Crystal Clear Technologies covenants that at no time will it cease or allow the System to cease operating based upon a default or termination as defined herein and that in the event this Agreement terminates, Crystal Clear Technologies will ensure that the System continues operating until such time as another services provider obtains and begins to operate the System. The requirements of this covenant to operate shall survive termination or expiration of the Agreement.

## ARTICLE 8
## LIMITATION OF LIABILITY

8.1 **No Liability for Consequential Damages.** NEITHER CRYSTAL CLEAR TECHNOLOGIES NOR ASSOCIATION WILL BE LIABLE TO THE OTHER, THEIR RESPECTIVE AFFILIATES, SUBCONTRACTORS, EMPLOYEES, OR AGENTS, OR ANY THIRD PARTY, FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, CONSEQUENTIAL, OR OTHER DAMAGES, LOSSES, ALLEGATIONS, CLAIMS, SUITS, OR OTHER PROCEEDINGS, EXPENSES, LIABILITIES, OR COSTS (INCLUDING LEGAL FEES), INCLUDING LOSS OF PROFITS, EARNINGS; BUSINESS OPPORTUNITIES, OR DATA, IN ACCURACY OF DATA, COST OF PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES, OR PERSONAL INJURY (INCLUDING DEATH), RESULTING FROM, ARISING OUT OF, OR IN CONNECTION WITH, DIRECTLY OR INDIRECTLY, (I) THE PERFORMANCE OR NON-PERFORMANCE OF THIS AGREEMENT (IT BEING AGREED THAT DIRECT DAMAGES RESULTING FROM, ARISING OUT OF, OR IN CONNECTION WITH ANY EVENT OF DEFAULT DUE TO A PARTY'S FAILURE TO CURE ITS BREACH OF THIS AGREEMENT ARE EXCLUDED FROM THIS LIMITATION OF LIABILITY), (II) USE OF ANY SERVICES PROVIDED HEREUNDER BY A HOMEOWNER OR ANY THIRD PARTY, WITHOUT LIMITATION, (III) A CONTENTION THAT THE USE OF SUCH SERVICES BY HOMEOWNER OR ANY THIRD PARTY INFRINGES THE COPYRIGHT, TRADEMARK, TRADE SECRET, CONFIDENTIALITY, PRIVACY, OR OTHER INTELLECTUAL PROPERTY, OR CONTRACTUAL RIGHT OF ANY THIRD PARTY, (IV) MISTAKES, OMISSIONS, INTERRUPTIONS, DELETION OF FILES, ERRORS, DEFECTS, DELAYS IN OPERATION, NONDELIVERIES, MISDELIVERIES, TRANSMISSION, OR ANY FAILURE OF PERFORMANCE OF THE SERVICES, (V) ACTS OR OCCURRENCES BEYOND THE OTHER'S REASONABLE CONTROL, INCLUDING WITHOUT LIMITATION FORCE MAJEURE, AS DEFINED HEREIN, OR FAILURE OF PERFORMANCE BY AN ENTITY PROVIDING PREREQUISITE SERVICES RELATED TO THE PROVISION OF THE SERVICES TO TOLLGATE VILLAGE, (VI) THE CONTENT OF SERVICES AVAILABLE ON THE INTERNET OR OTHERWISE AVAILABLE THROUGH THE SERVICES, INCLUDING THE ACCURACY, QUALITY, AND CONFIDENTIALITY OF INFORMATION OBTAINED THROUGH THIRD PARTIES THROUGH THE SERVICES, OR (VII) THE ACTIVITIES OF OTHER INTERNET USERS IN ACCESSING

13

OR MONITORING ANY HOMEOWNER'S OR THIRD PARTY'S COMPUTERS OR
INTERNET APPLIANCE OR THEIR RESPECTIVE USE OF THE SERVICES

8.2    **No Liability for Content**. The parties agree that Crystal Clear Technologies has
no control over, nor does it undertake to control, the information that passes over or through its
telecommunications facilities, including its data communications facilities. Association
acknowledges that Crystal Clear Technologies is not responsible for any damages caused by
information or other communications received or posted by Association or any Homeowner or
other customer of Crystal Clear Technologies within Tollgate Village.

8.3    **Disclaimer of Certain Warranties**. CRYSTAL CLEAR TECHNOLOGIES
MAKES NO WARRANTY OR REPRESENTATION REGARDING THE CONTENT,
STABILITY, OR USABILITY OF SERVICES, INCLUDING ANY WARRANTY OF
MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER
EXPRESS OR IMPLIED WARRANTY.

8.4    **Liability for Services Outages**. THE HOMEOWNER'S SOLE REMEDY FOR
LOST SERVICES OR LOST DATA, INCLUDING DUE TO EXTRAORDINARY OR
UNREASONABLE INTERRUPTIONS OF SERVICES, SHALL BE A CREDIT FOR THE
EXACT TIME THE SERVICES WERE NOT AVAILABLE FOR USE; PROVIDED THAT
SUCH LOSS OF SERVICES EXISTED FOR TWELVE (12) CONTINUOUS HOURS (WITH
DOWNTIME FOR ORDINARY MAINTENANCE EXCEPTED) IN ANY TWENTY-FOUR
(24) HOUR PERIOD AND SUCH HOMEOWNER PROVIDES NOTICE OF SUCH LOSS OF
SERVICES AND REQUESTS SUCH CREDITS. CRYSTAL CLEAR TECHNOLOGIES
SHALL NOT BE RESPONSIBLE FOR ANY OTHER DAMAGES, INCLUDING THE LOSS
OR DAMAGE OR DESTRUCTION OF PROPERTY, INJURY TO PERSON OR ANIMALS,
LOST DATA, LOST PROFITS, OR LOST OPPORTUNITIES. ASSOCIATION
ACKNOWLEDGES THAT SERVICES ARE SUBJECT TO PERIODIC INTERRUPTIONS
OR DOWNTIME AND THAT CRYSTAL CLEAR TECHNOLOGIES HAS COVENANTED
TO MINIMIZE ANY SUCH OUTAGES.

### ARTICLE 9
### DEFAULT

9.1    **Breach**. During the term of this Agreement, a party ("**Claimant**") may assert that
the other party has committed a breach of the terms of this Agreement ("**Breach**"), by providing
a written notice detailing the nature of the Breach ("**Breach Notice**") to the party against whom
the Breach is being claimed ("**Breaching Party**").

9.2    **Cure Period**. The Breaching Party shall have forty-five (45) calendar days from
receipt of the Breach Notice to cure said Breach, unless the cure period for such Breach is
otherwise established in this Agreement or such Breach is not reasonably curable within such
forty-five (45) calendar days. If the Breaching Party does not contest the validity of the Breach
Notice and fails to cure said Breach within said forty-five (45) calendar days, such failure shall
constitute an event of default ("**Event of Default**"). If the Breach is not reasonably susceptible
to cure within the forty-five (45) calendar day period, the Breaching Party shall have a

14

reasonable period of time to cure the default if it commences the cure within the initial forty-five (45) calendar day period.

9.3 **Dispute Notice.** If the Breaching Party contests the validity of the Breach Notice, the Breaching Party must do so within ten (10) business days after receipt of the Breach Notice by providing written notice to Claimant regarding its intent to contest the Breach Notice ("**Dispute Notice**"). No more than two (2) business days after the Dispute Notice is received by Claimant, representatives of the Breaching Party and Claimant shall meet at a mutually agreeable location to seek to resolve the dispute regarding the Breach. The representatives shall work diligently and in good faith for a period of up to five (5) business days thereafter to seek agreement upon a resolution of the asserted Breach ("**Breach Resolution**").

9.4 **Resolution Period.** If the parties develop a Breach Resolution, Claimant shall not, as to the subject matter of such Breach Resolution, exercise its rights granted under this section prior to expiration of the cure period set forth in the Breach Resolution ("**Resolution Period**"). The failure on the part of a Breaching Party to cure the Breach within the Resolution Period shall be deemed an Event of Default. If the Breaching Party effectuates a cure to the Breach within the Resolution Period, such prior non-compliance shall not be deemed an Event of Default.

9.5 **Failure to Develop Resolution.** If the representatives do not develop a Breach Resolution within five (5) business days after Claimant's receipt of the Dispute Notice and the Breaching Party has not cured the Breach within such period, Claimant may provide notice to Breaching Party that Claimant considers Breaching Party to have committed an Event of Default and the rights and remedies provided in this section shall be available to Claimant.

9.6 **Acknowledgment of Cure.** Following the Breaching Party's proper cure of a Breach, Claimant shall deliver to the Breaching Party a written notice acknowledging that such cure has been adequately effectuated.

9.7 **Dispute Regarding Effective Cure.** Expedited Dispute Resolution shall be utilized for the purpose of resolving any dispute as to whether a cure has been effectuated in accordance with the applicable Breach Resolution.

9.8 **Default Remedies.** If a party commits an Event of Default, the other party shall have the right to avail itself of all rights and remedies; provided, however, that the remedy of termination is only available for the Events of Default listed herein.

9.9 **Termination by Association.** This Agreement may be terminated by Association, subject to the dispute and cure provisions provided in this Agreement, upon the occurrence of any of the following events that result in Events of Default:

(a) Crystal Clear Technologies demonstrates consistent gross negligence and/or incompetence in the management of the System;

(b) Subject to the dispute and cure provisions provided in this Agreement, Crystal Clear Technologies persistently and materially fails to meet the performance

15

standards set forth in this Agreement during any consecutive twelve (12) month period and such failure has resulted in a severe degradation of the overall quality of the Services;

    (c)    Crystal Clear Technologies files for bankruptcy protection; or

    (d)    Subject to the dispute and cure provisions provided in this Agreement, Crystal Clear Technologies materially fails to operate and maintain the System in a manner that complies with applicable material safety standards, and such failure constitutes an imminent threat to general health or safety.

9.10    **Termination by Crystal Clear Technologies**. This Agreement may be terminated by Crystal Clear Technologies upon the occurrence of any of the following events:

    (a)    If any legislative, judicial, or regulatory action or decision shall occur which precludes or prohibits Crystal Clear Technologies from providing the Services;

    (b)    If applicable law prohibits the payment and collection of charges for Basic Services by including such charges in Homeowners' assessments whether or not a Homeowner uses Basic Services; or

    (c)    Subject to the dispute and cure provisions provided in this Agreement, Association commits a material breach of this Agreement that results in an Event of Default. For purposes of this Agreement, a **"material breach"** by the Association means a breach that has a material adverse effect on Crystal Clear Technologies, the Services or the System.

## ARTICLE 10
## TERM

10.1    **Commencement Date and Term**. This Agreement shall commence on the Effective Date and continue for a period of twenty-five (25) years, provided, however, that if the Easement terminates, this Agreement shall terminate.

10.2    **Renewal**. This Agreement will automatically renew for an additional twenty-five (25) year renewal term upon expiration of the first term, provided, however, that during any renewal term, either party may terminate this Agreement, for any reason whatsoever, upon not less than one (1) year's written notice.

10.3    **Right of Access**. Upon expiration or termination of this Agreement, Crystal Clear Technologies shall retain the right of access, consistent with the Easement and at no charge, for so long as Crystal Clear Technologies has a legal right to serve the geographic region in which Tollgate Village is located, to serve the Homeowners on an individual subscription basis at the rates then currently in effect for individual retail subscribers of Crystal Clear Technologies in Williamson County, Tennessee.

16

10.4    **Continuing Obligations.** Upon the termination or expiration of this Agreement, the parties shall be relieved of all rights and obligations hereunder except for those rights and obligations which expressly survive termination or expiration including, without limitation, (i) ownership by Crystal Clear Technologies of the System, (ii) Crystal Clear Technologies' obligation to operate the System, without interruption, until transfer of the System to another or until another provider is offering Services to Homeowners, (iii) ownership by Homeowners of Home Wiring, and (iv) restrictions on the disclosure of confidential information.

### ARTICLE 11
### DISPUTE RESOLUTION

11.1    **Dispute Resolution.** If a dispute arises out of or relates to this Agreement or its breach, the parties shall endeavor to settle the dispute first through direct discussions. If the parties cannot resolve the dispute within five (5) business days, the parties agree to proceed to mediation as provided below. Pending the resolution of any dispute, the parties shall continue to fulfill their respective obligations under this Agreement. If a dispute is not resolved within the time limit set forth above, the parties agree to proceed to mediation of the dispute under the mediation rules of the American Arbitration Association ("AAA") and to conclude such mediation within ten (10) business days after the filing by a party of a request to AAA for mediation. Each party agrees to pay its own costs, plus an equal share of the costs of the mediator and mediation facilities. If a dispute is not resolved by mediation within the time provided above, either party may initiate Expedited Dispute Resolution pursuant to Section 11.2 to resolve such dispute. Notwithstanding the foregoing, the parties agree that either party may bring in any appropriate forum a request or petition for a temporary restraining order or preliminary injunction.

11.2    **Expedited Dispute Resolution.** Notwithstanding the dispute resolution procedures provided in Section 11.1 above, either party may initiate Expedited Dispute Resolution for matters arising out of provisions of this Agreement that expressly make Expedited Dispute Resolution available. A party may initiate Expedited Dispute Resolution by submitting written notice to the other party of a dispute and a request for Expedited Dispute Resolution ("EDR Notice"). For purposes of this Section, the EDR Notice must be provided by means of same-day delivery, such delivery subject to confirmation, including hand-delivery of written notice, telecopy, or electronic mail. The EDR Notice shall specify the issues in dispute and the outcome desired by the party giving such notice ("Noticing Party"). The parties, after receipt of the EDR Notice, shall negotiate in good faith for five (5) business days in an attempt to resolve the dispute ("Initial Period"). During the Initial Period, and at the same time the negotiations described in the preceding sentence are taking place, (i) the Noticing Party shall file a request ("Request for Arbitration") with AAA to appoint an arbitrator with expertise in communications-related issues ("Arbitrator"), and (ii) each party to the dispute will appoint an expert with knowledge of the subject matter of the dispute ("Party Experts"). The Request for Arbitration shall include a copy of this Section and a statement directing the Arbitrator to conduct the proceedings and render a decision consistent herewith. If the dispute is not resolved within the Initial Period, the Party Experts shall thereafter for a second five (5) business day period commencing immediately upon conclusion of the Initial Period ("Second Period") meet and (i) negotiate in good faith in an attempt to develop a consensual resolution, and (ii) develop a position acceptable to each such party as to the appropriate final resolution of the dispute ("Final

17

Position"). If the dispute is still unresolved after the Second Period, the parties will, within five (5) business days after the conclusion of the Second Period, submit their Final Positions in writing, with a written statement of reasons, to the Arbitrator and to all other parties ("**Submission**"). The Arbitrator will then be required to render a final decision, with reasons stated, within fifteen (15) business days of the date of receipt of all parties Submissions (or within fifteen (15) business days after appointment of the Arbitrator if such appointment is not in place at the date for submittal of the Submissions despite all parties' good faith efforts and for reasons outside the parties' control, in which case the parties shall diligently and in good faith seek the appointment of the Arbitrator as soon as possible) ("**Arbitration Period**"). Failure to submit a Submission within the required time shall be deemed a waiver of such party's right to submit a Submission, unless a late submittal is expressly permitted by all other parties to the dispute. The Arbitrator will be directed to select one of the parties Final Positions without change, unless extraordinary circumstances dictate otherwise. Any arbitration decision that deviates from one of the parties' Final Positions shall include a written statement of the reasons, including a specific statement of the "extraordinary circumstances," that justifies such a deviation. The Arbitrator may, in his or her discretion, convene one (1) hearing, on no less than five (5) business days written notice, such hearing not to exceed one (1) day in length; provided that the convening of such a hearing shall not extend the time period that the Arbitrator has to render a final decision. Availability of discovery shall be only at the discretion of the Arbitrator. Any request for discovery shall be made at the time of submittal of the Submissions, with reasons stated. The presumption shall be against the allowance of discovery unless the Arbitrator determines that discovery is materially necessary to a just resolution of the dispute. Unless otherwise stated or modified, all other applicable rules of the AAA shall apply.

## ARTICLE 12
## CONFIDENTIAL INFORMATION

12.1 **Confidentiality.** Association agrees that Crystal Clear Technologies has and will reveal certain confidential information to Association, including its manner of doing business, the elements and design of the System, and any information specifically marked by Crystal Clear Technologies as "Confidential Information" ("**Confidential Information**"), and that the unauthorized disclosure and/or use of Confidential Information would be damaging to Crystal Clear Technologies. Accordingly, Association agrees:

(a) Not to use Confidential Information other than in connection with its performance under this Agreement;

(b) To maintain the Confidential Information in confidence and not to disclose any portion of the Confidential Information to any persons or entities other than the Association's employees or affiliates who have a need to use the same in connection with its performance under this Agreement; and

(c) To cause each of the Association's employees or affiliates who have access to the Confidential Information to exercise the same degree of care as Association normally exercises to preserve and safeguard its own confidential and proprietary information.

18

12.2    **Public Domain.** Such obligations of nonuse and nondisclosure shall not apply to information that is now in, or hereafter becomes part of, the public domain, whether by publication or otherwise, other than as a result of the Association's breach of this Agreement, or to information that Crystal Clear Technologies authorizes for public release.

### ARTICLE 13
### GENERAL TERMS

13.1    **Publicity/Trademark Licenses.** Association and Crystal Clear Technologies hereby grant to the other a non-exclusive license to use the name and logo of the other in advertising and promoting the Services in Tollgate Village for the term of this Agreement. No licenses, express or implied, under any patents, copyrights, trademarks, service marks, or trade secrets, are granted to Association by Crystal Clear Technologies unless otherwise agreed to herein.

13.2    **Cooperation; Non-Interference.** The parties agree to cooperate with the other and use reasonable efforts to assist the other in the performance of the other's obligations and the exercise of the other's rights contained in this Agreement. Each party agrees that it will not intentionally interfere with the other's performance under this Agreement.

13.3    **Home Wiring Ownership.** All Home Wiring shall be owned and maintained by the Homeowners, except that Crystal Clear Technologies shall, in its sole discretion and at the request and expense of a Homeowner, service and repair Home Wiring pursuant to a separate written agreement. The NID, installed by Home Builder on or near each Home in Tollgate Village as per the home wiring specifications, shall be a "demarcation point" as that term is used under applicable FCC rules and decisions relating to telephone inside wire and/or cable television home wiring and is the point where Crystal Clear Technologies' ownership rights and responsibilities end and the Homeowner's rights and responsibilities begin.

13.4    **Governing Law.** This Agreement has been executed and delivered, and is intended to be performed, in the State of Tennessee and the terms, conditions, covenants, and agreements herein contained shall be governed, construed, and controlled according to the laws of the State of Tennessee, without regard to its law regarding conflicts of law, and the laws of the United States.

13.5    **Waiver.** No failure on the part of any party hereto to enforce any right hereunder shall be considered a waiver of such right or any subsequent right.

13.6    **Notices.** Notices shall be in writing and shall be given by (a) personal delivery, (b) deposit in the United States mail, certified mail, return receipt requested (which receipt shall be preserved as evidence of delivery), postage prepaid, or (c) overnight express delivery service, addressed or transmitted to Association and Crystal Clear Technologies at the following addresses, or to such other addresses as either party may designate to the other in a writing delivered in accordance with the provisions of this Section:

If to Association:                    Tollgate Village Association, Inc.

19

621 Bradley Court
Franklin, TN 37067


If to Crystal Clear Technologies:     Crystal Clear Technologies, LLC
                                      621 Bradley Court
                                      Franklin, TN 37067


All notices shall be deemed to have been delivered and shall be effective upon the date of actual receipt.

    13.7   **Severability.** The invalidity of any provision of this Agreement, as determined by a court of competent jurisdiction, shall in no way affect the validity of any other provision hereof.

    13.8   **Construction.** The titles which are used following the number of each Section are so used only for convenience in locating various provisions of this Agreement and shall not be deemed to affect the interpretation or construction of such provisions. The parties acknowledge that each party and its counsel have reviewed and revised this Agreement. This Agreement shall not be construed for or against Association or Crystal Clear Technologies. References in this Agreement to "Sections," "Articles," and "Exhibits" refer to the Sections and Articles of and the Exhibits to this Agreement unless otherwise noted.

    13.9   **Authorized Agents.** Association understands and agrees that Crystal Clear Technologies may, from time to time, enter into contracts with affiliates, agents or authorized vendors (collectively **"Authorized Agents"**) for the purpose of performing under this Agreement. The access to, entry upon, and exit from Tollgate Village herein granted Crystal Clear Technologies shall extend to such Authorized Agent(s). Association agrees that Authorized Agents shall have the right to market and contract with Homeowners in Tollgate Village for Additional Services, who shall be charged and billed individually and separately for such services.

    13.10   **Force Majeure.** No liability or breach of this Agreement shall result from delay in performance or nonperformance caused, directly or indirectly, by circumstances beyond the reasonable control of the party affected (**"Force Majeure"**), including, but not limited to, fire, extreme weather, explosion, flood, war, power interruptions, satellite interruptions, the act of any governmental body, legislation or regulatory impediment, accident, labor trouble or the shortage or inability to obtain material, service, personnel, equipment or transportation, failure of performance by a common carrier, failure of performance by a public utility, or vandalism.

    13.11   **Successors and Assigns.** This Agreement may only be assigned by Crystal Clear Technologies to the permitted assignee of Crystal Clear Technologies' rights under the Easement. This Agreement may not be assigned by the Association without Crystal Clear

20

Technologies' prior written consent. This Agreement shall be binding upon the successors and permitted assigns of the parties.

13.12 **Legal Relationship.** The relation created hereby is not a partnership or joint venture but a contractual agreement between independent parties, and it is expressly understood and agreed that Association does not in any way, nor for any purpose, become a partner of Crystal Clear Technologies or a joint venturer with Crystal Clear Technologies in the conduct of Crystal Clear Technologies' business, or otherwise. Except as otherwise specifically provided in this Agreement, the parties agree that Association is in no way a legal representative or agent of Crystal Clear Technologies and can assume or create no obligations on Crystal Clear Technologies' behalf and that Crystal Clear Technologies is in no way a legal representative or agent of Association and can assume or create no obligations on Association's behalf. Association shall make no warranties or representations not authorized in writing by Crystal Clear Technologies.

13.13 **Changes in Law.** This Agreement shall be amended, modified or changed to comply with any change in legislation, government regulation, or applicable legal precedent that might materially affect the relationship between Crystal Clear Technologies and Association. Such amendment shall be negotiated in good faith by the parties and shall be in writing and signed by the parties. In the event that the parties cannot agree on an appropriate amendment to this Agreement within thirty (30) days after a request for good faith negotiations, either party may initiate Expedited Dispute Resolution proceedings in accordance with this Agreement.

13.14 **Time Periods.** In the event the time for the performance of any obligation or the taking of any action hereunder expires on a Saturday, Sunday or legal holiday, the time for performance or taking such action shall be extended to the next succeeding day which is not a Saturday, Sunday or legal holiday.

13.15 **Further Assurances.** Each party agrees that it shall execute and deliver such further instruments, provide all information, and take or forbear from taking such further action and things as may be reasonably required or useful to carry out the terms, intent and purpose of this Agreement and as are not inconsistent with the terms of this Agreement, including, without limitation amending the Declaration from time to time to carry out the terms and intent of this Agreement.

13.16 **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which shall constitute one and the same instrument.

13.17 **Entire Agreement.** This Agreement sets forth all the promises, inducements, agreements, conditions, and understandings between Association and Crystal Clear Technologies relative to Crystal Clear Technologies' provision of Services to Tollgate Village, and there are no promises, agreements, conditions, or understandings, either oral or written, express or implied, between them other than are set forth herein. No subsequent alteration, amendment, change, or addition to this Agreement shall be binding upon Association or Crystal Clear Technologies unless in writing and signed by each of them. Parole evidence shall never be admissible in any court, tribunal, arbitration or governmental agency to modify, amend or vary the terms of this Agreement.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the day and year first written above.

ASSOCIATION:

**TOLLGATE VILLAGE ASSOCIATION, INC.,**
a Tennessee nonprofit corporation

By: _____
Name: _____
Title: _____

STATE OF TENNESSEE
COUNTY OF _Williamson_

    Before me, the undersigned authority, a Notary Public in and for the state and county aforesaid, personally appeared _____James Carbine_____, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that (s)he executed the foregoing

instrument for the purposes therein contained and who further acknowledged that (s)he is _Poesident_____ of **TOLLGATE VILLAGE ASSOCIATION, INC.,** the within named bargainor, a Tennessee nonprofit corporation, being authorized to execute the foregoing instrument on behalf of the corporation.

Witness my hand and official seal at office this 1st day of March, 2006.

_____
Notary Public

My Commission Expires:
_6-20-2011_____

**CRYSTAL CLEAR TECHNOLOGIES, LLC,**

a Tennessee limited liability company

By _____

Name: JAMIE SPURLOCK

Title: PRESIDENT


STATE OF TENNESSEE

COUNTY OF __Williamson__

Before me, the undersigned authority, a Notary Public in and for the state and county aforesaid, personally appeared _____Jamie Spurlock_____, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged ____self to be _____ of **CRYSTAL CLEAR TECHNOLOGIES, LLC,** the within named bargainor, a Tennessee

limited liability company, and that (s)he, as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the company by ___self as such officer.

Witness my hand and official seal at office this 1st day of March, 2006.

_____
Notary Public

My Commission Expires:

6-20-2011

## EXHIBIT 1

## BASIC VIDEO SERVICE

## Crystal Clear "Select" Programming

**Local Channels**

| | |
|---|---|
| WKRN (ABC) | 2 |
| WSMV (NBC) | 4 |
| WTVF (CBS) | 5 |
| WNPT (PBS) | 8 |
| WZTV (FOX) | 17 |
| WUXP (UPN) | 30 |
| WHTN (IND) | 39 |
| WNAB (WB) | 58 |

### LifeStyle/Entertainment

A&E
BBC America
BET
Bravo
CCTV-9
Comedy Central
Court TV
E! Entertainment TV
FX
GalaVision
Game Show Network

Sci-Fi Channel
SiTV

Spike TV
TNT
TBS
USA
WGN
Women's Entertainment
Telefutre Este
Telefuture Oeste
Univision Este
Univision Oeste
Independent Film Channel
LifeTime Movie Network
Turner Classic Movies
American Movie Classics

**Family**
ABC Family
Cartoon Network
Disney Channel (East)
Disney Channel (West)
Nick/Nick at Nite (East)
Nick/Nick at Nite (West)
Noggin
PAX TV
TV Land
Toon Disney
Beauty & Fashion

**Education/Learning**
Animal Planet
Discovery Channel
Discovery Health
Food Network
History Channel
Home and Garden TV
The Learning Channel
The Science Channel

**Shopping**
Beauty & Fashion
Catalog TV
Healthy Living Channel
Home Shopping Network
Jewelry Television
Men's Channel
QVC
Shop NBC
Shop At Home

**Music**
Country Music Television
FUSE
MTV
MTV2
VH1

### News/Informational

C-Span
C-Span2
CNBC
CNN
Fox News Channel
G4 TechTV
Headline News
MSNBC
NASA
The Weather Channel
LifeTime

**Religion**
Eternal Word Network
Angel One
Trinity Broadcasting Network

**Public Interest**
Classic Arts Showcase
Coolors TV
Free Speech TV
Good Samaritan TV
HITN
LinkTV
PBS You

**Sports**
ESPN
ESPN Alternate
ESPN2
ESPN2 Alternate
ESPN News
ESPN Classic
NFL Network

## Fox Sports Network

| | | |
|---|---|---|
| Fox Sports Net Arizona | Fox Sports Net Ohio | |
| Fox Sports Net Bay Area | Fox Sports Net Pittsburg | |
| Fox Sports Net Cincinnati | Fox Sports Net Rocky Mtn. | |
| Fox Sports Net Detroit | Fox Sports Net South | |
| Fox Sports Net Florida | Fox Sports Net Southwest | |
| Fox Sports Net Midwest | Fox Sports Net West | |
| Fox Sports Net New England | Fox Sports Net West 2 | |
| Fox Sports Net New York | Horse Racing TV | |
| Fox Sports Net North | Madison Square Garden | |
| Fox Sports Net Northwest | NESN | |
| The Speed Channel | TV Games Network | |
| Turner South | Sunshine Network | |

**Digital Audio**

SIRUS- 60 Channels Digital Audio
CD Music- 33 Channels

# Crystal Clear "Premium" Programming
### (Includes all channels of Crystal Clear "Select" programming plus:

| | |
|---|---|
| Biography | Encore (West) |
| Encore WAM | Encore Action |
| Mun2 | Encore Drama |
| SoapNet | Encore Love |
| Style | Encore Mysteries |
| Bloomberg TV | Encore Westerns |
| CNBC World | Fox Movie Channel |
| Boomerang | The Movie Channel (West) |
| Hallmark Channel | Discover Home |
| Nicktoons | Discovery Kids |
| Nickelodeon Games | Do It Yourself Network |
| | |
| ESPNU | History Channel International |
| The Golf Channel | Military Channel |
| Fox Soccer Channel | The Science Channel |
| Outdoor Life Channel | National Geographic Channel |
| The Outdoor Channel | The Science Channel |
| GOL TV | |
| Great American Country | VH1 Classic |
| | |
| Additional Audio | 20- Channels |

## Movie Channels

### HBO

HBO
HBO2
HBO Family
HBO Latino
HBO West
HBO West 2
HBO Family West
HBO Latino West
HBO Signature
HBO Signature West

### Showtime Unlimited

Showtime
Showtime Too
Showtime West
Showtime Too West
Showtime Extreme
Showtime Extreme West
Showtime Beyond
Showtime Beyond West

### Starz!

Starz!
Starz! Theater
Starz! Family
Starz! Cinema
Starz! Kids
Starz! West
Starz! Cinema West

### MAX

Cinemax
More max
Action Max
Cinemax West
More Max West
Action Max West

# Exhibit 2

## Internet Access Service Requirements

Internet connectivity for each homeowner in Tollgate Village will be provided via 10/100 megabits per second, Ethernet Local Area Network. All personal computers, laptops, firewalls, routers, and any devise connected to the network will require:

Network Interface Card( NIC)- 

The NIC must be an interface built in the Homeowner's PC or an external NIC designed to permit access to the Ethernet network. This connection equipment is the responsibility of the homeowner to supply for proper connectivity. The connection will be made through a RJ45X connector and connected to an Ethernet hub/switch provided by CCT in each home.

Personal Computer Requirements–

The homeowners' PC is required to maintain the software, operating system, RAM levels, Internet browser, and security systems necessary to interface and perform at the level necessary for the networking installed in each home. The Internet service supports the following operating systems:

Microsoft Windows 98SE, ME, 2000, and XP
The computer requires processor speed of 233 MHZ or higher and at least 64MB of RAM.

PC Security

It is highly recommended that the homeowner maintain a Personal Firewall and Security applications on their PC. The internet service will provide for system wide security interfaces but will not be responsible for security breaches on the individual computer. *Crystal Clear Technologies* will provide each homeowner, upon request, a list of recommended security service providers of software and firmware products.

# Exhibit 3

## Telephone Service Requirements

Telephone service will be provided as an option to all homeowners in Tollgate Village. A standard RJ45X connector and CAT5e wiring will be provided by the homebuilder and terminated in a central termination point for all connections in the home.

The standard telephone service in each home will be converted to "analog" service over the digital network and delivered to each home via the fiber optic infrastructure. This service will work with any standard "analog" telephone that can be purchased from *Crystal Clear Technologies* or any qualified vendor that meets existing FCC requirements for communications equipment interfaces.

# Exhibit 4

Crystal Clear Technologies, LLC does not provide any additional services at this time.
However, at the request of the homeowner, Crystal Clear Technologies, LLC will provide names
of companies that may provide those additional services.

# Exhibit 5

## Service Operating Standards

Service Level Standards consist of operating commitments by *Crystal Clear Technologies* to Tollgate Village for Voice, Internet and Television services.

The Fiber Optic Network installed in Tollgate Village is designed to provide the highest quality of services available and Crystal Clear Technologies commits to meeting the" Performance Targets" detailed in this operating standards document. Details of the "Performance Targets" are defined in the following segments:

- ➤ Customer Care
- ➤ Service Requests and Response Time
- ➤ System Performance Targets
- ➤ Service Interruptions and Credit Policy

## Customer Care

Crystal Clear Technologies will provide a Customer Support Center (CSC), available to each user in Tollgate Village on a 24 hour- per-day, 7 day-a-week basis. The center will be staffed by employees dedicated to assisting each customer with service issues for the Television, Internet, and Telephone products supplied to the homeowner. The CSC will also supply trouble-shooting assistance to determine origin and location of faults if outside of the Crystal Clear Technologies network service responsibilities.

Crystal Clear Technologies will also be in a position to supply support and technical expertise for service requests that are outside the services and products delivered under the homeowner's agreement. These services can be priced on an individual case basis upon request.

## Service Requests and Response Time

In the event a customer places a call to the CSC, a trouble ticket will be created and begin the process of trouble resolution. This process will include:

> Remote testing and trouble isolation
> Customer interaction to perform trouble resolution
> Determine if on-site visit is required to identify trouble issues
> Negotiate on-site appointment to meet customer availability
> Dispatch technician when trouble is determined to be in the Crystal Clear network services.
> Create trouble report to the appropriate local exchange service provider or third party carrier of services if trouble determined to be outside of Crystal Clear's network
> Establish timelines to meet response time requirements

### Response Times

> Customer Service Center, "CSC", will be available for trouble reporting 24 hrs per day, 7 days a week.
> CSC will provide updates regarding status of reported problem within a four (4) hour period of time trouble ticket was initiated
> Trouble reports that result in total interruption of service will be automatically escalated to priority one status and update responses provided in a two (2) hour time period
> On-site technicians will be available to visit the customer's home by next business day, during normal business hours between 8 am to 5 pm Central Standard Time, unless a different time is negotiated and accepted by Crystal Clear Technologies and the customer.
> Under "Normal Operating Conditions" Crystal Clear Technologies will make every effort to successfully repair interruptions during the agreed upon appointment. If the service interruption is not repaired with in 48 hrs. from the time of the agreed appointment, the trouble ticket will fall under the conditions of the Service Interruption and Credit Policy guidelines.

## System Performance Targets

### Digital Television Service

> Notify all customers 48 hrs. prior to service interruption on television signals
> Planned maintenance that involve service interruptions will be scheduled during after hour time frames between 12:00 am and 6:00 am Central Standard Time

- Design Digital Television head-end to perform at an operation level of 98% of the time except during scheduled maintenance, regional carrier outages or events beyond Crystal Clear's control, including power failure in the community.
- Remote monitoring of services will be provided on a 24 hr., 7 day a week basis and will generate trouble reports based on identified service level interruptions
- Create monthly reports, available on request, of uptime availability, service interruptions and service to individual homeowners.

**Internet Access**

- Internet operation and availability for access will be maintained at a level of 99.9% of the time except for scheduled maintenance, backbone service provider, or local exchange carrier service interruption, and events beyond Crystal Clear's control including power interruption in the community.
- Design local backbone high speed Ethernet network and deliver to each home. The local network will be maintained at a level of 99.9% up time, except for scheduled maintenance, customer caused outages, and or damage to equipment located in each home, outside the control of Crystal Clear Technologies.
- Remote monitoring will be provided for the Internet service network on a 24 hr., 7 days per week basis and generate trouble reports based on identified service level interruptions.
- Create monthly reports, available on request, of uptime availability, service interruptions and service to individual homeowners.

**Voice Telephone Service**

- Telephone service operation and availability for access will be maintained at a blocking objective of no more than 1% during busy hour, except for scheduled maintenance, local exchange carrier service interruption and events beyond Crystal Clear's control, including power interruption in the community.
- Under normal operating conditions, interrupted telephone service shall be restored for the end user in twenty-four (24) hours or less from the time a service ticket is issued.
- Remote monitoring will be provided for the Telephone service network on a 24 hr., 7 days per week basis and generate trouble reports based on identified service level interruptions.
- Under normal operating conditions basic telephone adds moves or changes received before the close of business and not requiring a premise visit will be completed by next business day after the order was received.
- Under normal operating conditions basic telephone services adds, moves, or changes that require a premise visit will be performed with in twenty-four (24) hrs, from the time the service request was issued to the CSC.
- Create monthly reports, available on request, of uptime availability, service interruptions and service to individual homeowners.

## Service Interruption and Credit Policy

- "Under Normal Operating Conditions", for valid interruptions of service, not due to the customer's action, Crystal Clear Technologies shall make every effort to successfully repair the interruption during the agreed appointment with the customer. If the interruption is not repaired within twenty-four (24) hours of the agreed appointment because of service repair quality or other actions by Crystal Clear Technologies that reflect inadequate customer service, the customer will receive a credit equal to ten percent (10%) of the customer's normal billing for the service(s) interrupted. Prior to

paying the customer, Crystal Clear Technologies will meet with a representative of the HOA to review any interruptions taking longer than 24 hrs. to determine which service calls exceeding 24 hrs. represent quality of services issues and require payments to the end customer.

➢ All review of service interruptions and the decisions for lack of service payments will be the agreed to by Crystal Clear Technologies and the HOA and payments will be made to the HOA and considered as final payments under the agreed upon resolution.

## Performance Metrics

Performance Metrics supplied for the delivery of service(s) for individual products presented by Crystal Clear Technologies, shall be reviewed on a quarterly basis and determined by Crystal Clear Technologies and the HOA as to meeting the standards establish for each product and service response.

Performance Metrics will be considered met if 95% of services and support are within the time frames and service levels of the individual products, Television, Internet, and Telephone service and the response times to trouble reports and resolution of interruptions. If it is determined the Performance Metrics are not met, for a service or services, on a per occurrence basis, a "failed performance fee" of $50.00 per occurrence will be paid to the HOA.

Crystal Clear Technologies and a representative of the HOA will agree on the review of failed occurrences and payments for those agreed occurrences, which would be considered as final agreement and resolution of the performance review.